# Root *v.* Republic Acceptance Corporation, Appellant.

*Bailment—Sale—Automobile—Possession—Delivery—Title.*

1. Where persons trafficking in and loaning money on automobiles, execute a number of papers giving a similitude of the passing of title, the courts will look through the screen of paper titles to ascertain what was the real situation.

2. Where an owner of an automobile executes a bill of sale, and a storage receipt to another, and the latter executes a bailment lease back to the owner, and there is no change of possession, and it appears that the real transaction was nothing more than a loan of money on the automobile, the relation between the parties is that of debtor and creditor and not of bailor and bailee.

3. Where a vendee or pledgee takes title to personal property, without taking possession of it, he takes the risk of the integrity and solvency of his vendor or pledgor, and he has no title therein as against the rights of subsequent bona fide purchasers or levying creditors.

4. Where a person lends money on an automobile, takes a bill of sale and storage receipt from the owner, and gives to the owner a bailment lease, without any change of possession, and thereafter the lender enters a general judgment against the owner, levys on the machine, releases the levy on the same day, and then takes over the machine under the bailment lease, he cannot maintain possession of it against the trustee in bankruptcy of the owner, if it appears that all of the transactions were within four months prior to the owner's bankruptcy, and that the owner was insolvent when the lender took possession.

Argued October 12, 1923. Appeal, No. 140, Oct. T., 1923, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1921, No. 2632, on verdict for defendant, in case of P. W. Root, Trustee in Bankruptcy, etc., v. Republic Acceptance Corporation. Before Moschzisker, C. J., Frazer, Walling, Sadler and Schaffer, JJ. Affirmed.

Assumpsit for value of automobile. Before Macfarlane, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $4,500. Defendant appealed.

*Error assigned* was, inter alia, refusal of request for binding instructions for defendant, quoting record.

*A. C. Purdy,* of *Scott & Purdy,* for appellant.—Defendant contends that the relation of defendant and the

sales company was that of bailor and bailee and that defendant's title to the property was valid as against creditors or against the trustee in bankruptcy: Pratt v. Magee, 69 Pittsburgh L. J. 814; Edward's App., 105 Pa. 103; Potter v. Stetson, 11 Pa. Superior Ct. 627; Federal Sales Co. v. Kiefer, 273 Pa. 42; Weatherill v. Gallagher, 217 Pa. 635; Hayden v. McMillan, 79 Pa. Superior Ct. 1.

*Albert C. Hirsch,* with him *Watson & Freeman,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 7, 1924:

The complicated dealings between many of those trafficking in and loaning money on automobiles has reached a point where the courts must strip transactions of their pretences and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts. Those who buy and sell, bail and loan money on motor vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the screen of paper titles to ascertain what was the real situation.

W. R. Averill Sales Company was a dealer in automobiles and motor trucks and Republic Acceptance Corporation was engaged in the business of loaning money on such vehicles. The Averill Company had purchased the cars and truck in question from manufacturers and they were in its possession. It borrowed money from defendant on December 30, 1920, and delivered to the latter bills of sale and storage receipts for a truck and automobile and simultaneously received a bailment lease thereof from defendant. On February 24, 1921, a similar transaction took place as to two other automobiles. No change in possession of the vehicles took place, all that was done was to execute the papers. Defendant contends this gave it title to the cars as bailor, good as against creditors of the Averill Company and against

the trustee in bankruptcy of that company, who was appointed as a result of an adjudication on March 17, 1921.

On March 1, 1921, defendant entered judgment against the Averill Company on two judgment notes not connected with the cars or truck in dispute, issued execution and caused a levy to be made on the property of the Averill Company, including, as established by the verdict, the cars and truck in question. Defendant released the levy on the day it was made and took possession of the cars and truck under clauses in the bailment lease conferring the right on it so to do. On March 4, 1921, an involuntary petition in bankruptcy was filed against the Averill Company, the execution and levy of the sheriff was restrained by order of the bankruptcy court, and, following the adjudication and appointment of a trustee, the latter brought this action of trespass in trover and conversion to recover the value of the three cars and truck and obtained a verdict and judgment, from which defendant appeals.

The court in its opinion, refusing a motion for new trial, held that the sales and bailment leases, while valid as between the parties, were void as against creditors, as there was no physical change in the possession of the property, that as the bankrupt had possession when the sheriff levied, the lien thereof was rendered void by the adjudication in bankruptcy, and, under the bankruptcy law, the trustee succeeded to the title and right of possession which the bankrupt had at the time the sheriff made the levy.

However much appellant desired and endeavored to disguise the transaction between it and the Averill Company by the dressing of the papers which were executed, —the bill of sale, the storage receipt and the bailment lease,—the real transaction, so far as third persons were concerned, was that of a loan by defendant to the Averill Company and the actual relation between them was not that of bailor and bailee but debtor and creditor.

It would be in the teeth of all our decisions to hold that such transactions as those we are considering constituted a valid transfer of title to defendant and it would likewise be in the teeth of the testimony to conclude that, at the time defendant levied its execution and took possession of the vehicles, it did not know the Averill Company was in financial difficulty. It was admitted by the officer of defendant, who acted for it in what was done, that he knew the other concern was having financial trouble and, because of this, execution was issued to conserve appellant's interests,—that the financial difficulties were the cause and the reason for issuing the execution. It is, therefore made plain, that the purpose in issuing the execution and in taking possession of the cars was to obtain an advantage over other creditors.

Appellant stands upon the proposition that the relation between it and the Averill Company was that of bailor and bailee; failing to sustain this position, it is worsted, as, except for this relation, it has no standing at all as against the trustee. There can be no bailment if there was no sale; and the sale was void as to creditors. Parenthetically it might be interesting to inquire why the judgments were entered and execution issued if defendant thought its title secure under the so-called bailment leases. As the contention is limited to the validity of the sale and bailment, the question discussed by appellee, as to when the rights of the trustee accrued, need not be considered, because, if there was no sale, so far as creditors were concerned, then the taking possession of the vehicles by the defendant, whose rights in that event rose no higher than the other creditors, gave it a preference unlawful under the bankrutpcy act.

The pending case is ruled against appellant by Bank of North America v. Penn Motor Car Co., 235 Pa. 194. There, as here, considering the real transaction, we said, at page 198: "It was the intention of the parties to pledge the motor cars as a security for moneys ad-

vanced......The bank. held title to the automobiles under the agreement and, as against the motor car company, had the right to take possession of them with or without the aid of a writ of replevin. As to creditors, the situation is different, and contracts, valid as between parties, are frequently declared invalid as......to creditors......The rule......is that a sale of personal property, leaving the vendor in possession and without doing anything to indicate a change of ownership, is fraudulent as against creditors......It would be dangerous to the public to countenance such transactions. ......When a vendee, or a pledgee, takes title to personal property, without taking possession of it, he takes the risk of the integrity and solvency of his vendor, or pledgor, when the rights of subsequent ·bona fide purchasers, or of levying creditors, arise." In that case, we held that a trustee in bankruptcy may void such a. fraudulent transaction; this would likewise follow from the express provision of the bankruptcy act because of appellant's judgment and levy. "All levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the ·estate of the bankrupt": Bankruptcy Act of July 1, 1898, section 67f, 30 Stat. at Large 565. There can be no question under the testimony in the pending case that the bankrupt was insolvent at the time the levy was made by defendant and at the time it took possession of the car. In the Bank of North America Case, at page 201, language was used which is most pertinent here: "If appellant had obtained a judgment on the notes held by it and had issued execution thereon within that period, all proceedings thereunder should have been

deemed null and void when the insolvent company was adjudged a bankrupt......The purpose of the original bankruptcy act, as well as the amendment of 1910, was to enforce equality of distribution among all the creditors, to strike down secret liens, and to avoid preferential transfers of property."

As was said by Judge HENDERSON in Bowersox v. Weigle & Myers, 77 Pa. Superior Ct. 367, 370: "It has been the unvarying rule in this Commonwealth for more than a century that a delivery of personal property must follow as well as accompany the transfer of title, and that a sale attended with a retained possession by the vendor is fraudulent in law however good the intent of the parties may have been.....Delivery of possession is necessary to transfer a title by the act of the owner in order that it be valid against creditors of the vendor. ......Where the......vendor appears to occupy the same relation to the property as he did before, the transfer is void as against creditors."  We said in White v. Gunn, 205 Pa. 229, 232, "It is as true now as it was when the rule was announced in that case [Clow v. Woods, 5 S. & R. 275], nearly a century ago, that, if a purchaser pays the price for goods purchased by him, without taking possession of them, he takes the risk of the integrity and solvency of his vendor when the rights of a subsequent bona fide purchaser or an execution creditor arise."  Furthermore, statutory as well as decisional law, makes voidable as against creditors such transactions as we are looking into.  Section 26 of the Sales Act of 1915, P. L. 543, 551, provides as follows: "Where a person having sold goods continues in possession of the goods......and such retention of possession is fraudulent in fact or is deemed fraudulent under any rule of law, a creditor or creditors of the seller may treat the sale as void."

There was some dispute as to whether one of the automobiles and the truck were levied on.  The jury by their verdict found that they had been and there was suf-

ficient evidence in the case to warrant the finding. As we understand the testimony, there is no question but that all the cars covered by this action, whether levied upon or not, were comprehended in the two transactions of December 30th and February 24th and were removed by the defendant from the place of business of the Averill Company, following the levy. Whether two of the cars were levied upon or not is of no real consequence in this suit, because the action is based on the proposition that defendant had converted the cars when it had no title thereto as against creditors and had obtained an unlawful preference and when title as between it and creditors was in the bankrupt, whose title passed to the trustee on the adjudication.

There was a preference here under the express words of the Bankruptcy Act. Section 60b, as amended in 1910, Act of June 25, 1910, 36 Stat. at Large 842, reads: "If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person"; and section 60a, as amended in 1903, Act of February 5, 1903, 32 Stat. at Large 799, "A person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suf-

fered a judgment to be entered against himself in favor of any person or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other such creditors of the same class." "In determining whether the creditor had reasonable cause to believe that a preference was intended, facts which are sufficient to put an ordinarily prudent man upon inquiry, charge the creditor with all the knowledge he could have acquired by the exercise of reasonable diligence": Schuette v. Swank, 265 Pa. 576, 582. Here, in substance, by what was done in entering the judgments and issuing execution and the reason avowed for so doing, appellant admits the endeavor to be preferred.

The learned court below rightly determined the controversy; the assignments of error are overruled and the judgment is affirmed.